No. 22-1185, 22-1605 & 22-1197

I~N~ T~HE~

# United States Court of Appeals for the Sixth Circuit

In Re:  FLINT WATER CASES

LUKE WAID,

*Plaintiff*

INDIVIDUAL PLAINTIFFS;
SETTLEMENT CLASS PLAINTIFFS

v.

RICHARD DALE SNYDER, *et al.*

*Defendant*

HELEN CHAPMAN; DOROTHY CHAPMAN; SHAMIYA CHAPMAN; LASHONDA
JONES; SHIRLEY GLOVER, on behalf of herself and her children J.S. and A.S.; TRISHA
WALTER; TOMMIE LOWERY, JR., on behalf of himself and his children T.L., I.L. and M.L.;
LINDA WELCHE; EARL WELCHE; REKIYAH WILLIAMS, on behalf of herself and her
children M.W., O.B., D.W., and D.W.; ASHLEY SUBLETT, on behalf of herself and her
children N.W., B.S., J.J., and K.L.; ELIZABETH FRANKLIN, on behalf of herself and her
children E.W. and E.W.; FLORLISA STEBBINS; ALBERT HARRIS; SHEILA HARRIS;
NADINE ROBERTS, on behalf of herself and her foster daughter D.J.

*Objectors-Appellants*

On Appeal from the United States District Court
For the Eastern District of Michigan, Southern Division
No.: 5:16-cv-10444-JEL-MKM, Hon. Judith E. Levy, USDJ

**REPLY BRIEF OF APPELLANTS**

MARK R. CUKER
CUKER LAW FIRM
One Logan Square, Suite 1200
Philadelphia, PA  19103
mark@cukerlaw.com
215-531-8522

# CONTENTS

**INTRODUCTION** ...................................................................................1

**ARGUMENT** .........................................................................................2

   **I.   CHAPMAN APPELLANTS HAVE STANDING TO PURSUE THIS APPEAL** ...........................................................................................2

      A. Chapman Appellants Have Standing to Pursue This Appeal Because Their Counsel Will Pass Through Any Reduction in Common Benefit Fees Resulting From This Appeal Directly to Them, Thereby Increasing Their Net Recoveries .....................................................................2

      B. Chapman Appellants have Standing to Challenge the Allocation of the Attorneys Fees on their Cases as well as the Overall Amount of the Fees .3

      C. Even Assuming that Chapman Appellants do not have standing to appeal the Common Benefit Fee award, and only their counsel does, this Court has Jurisdiction to hear this Appeal under F.R. App. Pro. 3(c) .......6

   **II. Chapman Appellants Raised all of the Arguments made on this Appeal in the Lower Court** ...................................................................................8

   **III.   Any "Findings of Fact" which the Lower Court made to Purportedly Support the Common Benefit Fee \ward to Liaison Counsel were Clearly Erroneous.** ..............................................................................................13

      A. The Evidence Overwhelmingly Demonstrated Liaison Counsel's Monopoly on Bone Scans in Flint ....................................................13

      D. There was No Evidence to Support any finding that $500 is the reasonable cost of a bone scan .......................................................17

   **IV.   Liaison counsel does not dispute that equitable Standards Govern the award of Common Benefit fees** ...........................................................18

**CONCLUSION**.................................................................................................20

# Cases

*Dixon v. Clem*, 492 F. 3d 665 (6th Cir. 2007) ............................................................9

*Holloman v. Mail-Well Corp.*, 443 F3 832 (11th Cir 2006) ......................................9

*In re Anheuser-Busch Beer Labeling Mktg. Litig.*, 644 Fed. Appx. 515 (6th Cir, 2016) ........................................................................................................................13

*In re Cendant Corp. Litigation* 264 F.3d 201 (3d Cir 2001) ...................................14

*In re Cendant Corp. PRIDES Litigation,* 243 F.3d 722  (3d. Cir.  2001) .............7, 8

*In re Mercury Interactive*, 618 F. 3d 988 (9th Cir. 2010*)* .......................................14

*In re National Football League Concussion Litig.*, 821 F.3d 410 (3d Cir. 2016)...14

*In re Sw. Airlines Voucher Litig.*, 799 F.3d 701 (7th Cir. 2015) .............................15

*Kleehammer v. Monroe County* 583 Fed. Appx. 18 (2d. Cir.2014) .........................9

*Kosinski v. Mason* 2001 WL 1511543 5405859 (Ct. of Appeals of Michigan Nov. 27, 2001) ............................................................................................................5

*Law Offices of Jeffrey Sherbow, PC v. Fieger & Fieger, PC,* 507 Mich. 272 (2021) ............................................................................................................5

*O'Brien v. Fieger* 2021 WL 5405859 (Ct. of Appeals of Michigan, Nov. 18, 2021) ............................................................................................................5

*United States v. United States Gypsum Co.*, 333 U.S. 364 (1948) .........................17

*Zucker v. Occidental Petroleum Corp.*, 192 F 3d. 1323 (9th Cir. 1999)...................7

*Zucker v. Westinghouse Elec. Corp.* 265 F.3d 171176 3d Cir. (2010)...................15

**INTRODUCTION**

Chapman appellants have standing to challenge the common benefit fee award to Liaison Counsel, if for no other reason that Chapman's counsel has pledged to pass through any reduction in common benefit fees to the clients themselves. In any event, they have standing because clients have a right to challenge the allocation of legal fees paid out of their recoveries, even if they do not challenge the total fee amount. Moreover, this court has a compelling interest in overseeing the award of tens of millions of dollars in legal fees in this case of great public interest.

Moreover, even if this court accepts the argument that only their counsel has standing, this court still has jurisdiction to hear the appeal under the 1993 amendments to F. R. App. Pro. 3(c) (7).

Nor did Chapman Appellants waive any argument raised on this appeal. A plain reading of their briefs and oral argument in the lower court shows that the gravamen of the objection—the inequity of allowing Liaison Counsel to collect common benefit fees from people they neither represented nor benefited—was stated clearly and unequivocally.

Finally, Liaison Counsel's efforts to justify the fee and cost awards through purported findings of fact in the lower court's fairness opinion fail for two reasons. First, these findings were unsupported by evidence, clearly erroneous and must be reversed. Second, the question of whether the settlement should have been approved

1

differs from the question of whether Liaison counsel should receive fees from clients of unrelated firms in addition to the tens of millions they will receive from their own cases.

**ARGUMENT**

**I.    CHAPMAN APPELLANTS HAVE STANDING TO PURSUE THIS APPEAL**

**A. Chapman Appellants Have Standing to Pursue This Appeal Because Their Counsel Will Pass Through Any Reduction in Common Benefit Fees Resulting From This Appeal Directly to Them, Thereby Increasing Their Net Recoveries**

Liaison Counsel uses a quote from Chapman's counsel "they don't need a piece of my fees"—to argue that any reduction in their fees would go to Chapman's counsel, not the appellants themselves, thereby depriving the latter of standing to appeal.  But the question of whether Liaison Counsel should receive a common benefit fee in addition to the huge fees they will reap from their own cases differs from the question of who would ultimately benefit from a reduction of the common benefit fee.   The answer to the latter question is not self-evident. Chapman counsel wishes to remove any doubt about this with the following statement:

> **Chapman Appellants' counsel hereby publicly and unequivocally pledges that he will pass through any reduction in Liaison Counsel's common benefit fee to the Chapman Appellants and similarly situated clients themselves, thereby increasing their net recoveries.**

2

**B. Chapman Appellants have Standing to Challenge the Allocation of the Attorneys Fees on their Cases as well as the Overall Amount of the Fees**

Liaison Counsel's attack on Chapman Appellants' standing is based entirely on the notion that they have standing to attack only the total ***amount*** of the fee they are charged on their cases and have no say in ***how*** that fee should be divided among attorneys. Liaison Counsel is dead wrong. Like any other client, Chapman Appellants have a cognizable legal right to object to how the contingent fees taken from their cases are divided among different lawyers.

This right is codified in Michigan Rule of Professional Conduct 1.5 which states

(e)    A division of a fee between lawyers who are not in the same firm may be made only if:

(1)   the client is advised of **and does not object to the participation of all the lawyers involved**; and

(2)   the total fee is reasonable.

(emphasis added).

Based on this rule, Michigan courts have repeatedly refused to enforce fee sharing agreements among lawyers which were not disclosed to **and approved by** the clients whose cases generated the fees at issue.

*Law Offices of Jeffrey Sherbow, PC v. Fieger & Fieger, PC*, 507 Mich. 272 (2021); *O'Brien v. Fieger* 2021 WL 5405859 (Ct. of Appeals of Michigan, Nov. 18,

3

2021) *Kosinski v. Mason* 2001 WL 1511543 5405859 (Ct. of Appeals of Michigan Nov. 27, 2001).  In each of these cases, the issue was not the total amount of fees, but how the fees were divided among different law firms. In each such case, the failure of the clients to approve that division vitiated counsel's fee sharing agreement.

Moreover, it is undeniable that Chapman Appellants had standing to object to the fees under Rule 23(h)(2) which states that "[a] class member, *or a party from whom payment is sought*, may object to [a] motion" for attorney's fees in a class action. (emphasis added).  Plainly, Chapman Appellants are parties "from whom payment is sought." Although Liaison Counsel repeatedly tries to distinguish between "common benefit fees" and "class action fees", the standards and processes for approving these fees are identical. Indeed, the lower court so stated in its fee opinion:

> To determine what is "reasonable" under Rule 23, courts in the Sixth Circuit apply the same analysis described in the above section [which discussed common benefit fees].

ECF# 2105, PageID 72075-72076, 72079

Having had their bone scan appointment cancelled by Liaison Counsel, or otherwise seen their recoveries diluted and diminished by Liaison Counsel's actions, Chapman Appellants have every right to protest the award of money from their cases

4

to Liaison Counsel, whether or not a successful objection reduces their overall fee.
[1]

In fact, courts have questioned how stringently the standing test should be applied in appeals of fee awards, given the judiciary's own interest in assuring fairness and transparency in huge fee awards. In *Zucker v. Occidental Petroleum Corp.*, 192 F 3d. 1323, 1328-1329 (9th Cir. 1999) the court stated

> In a class action, whether the attorneys' fees come from a common fund or are otherwise paid, the district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper. This duty of the court exists independently of any objection. Therefore, it exists *a fortiori,* regardless of whether an objector has a remediable economic stake in the court's decision. Because the district court had the authority and duty to pass upon the fairness of the attorneys' fees settlement independently of whether there was objection, we need not decide whether the objector had standing.

*Id.* (footnote omitted).

Similarly in *In re Cendant Corp. PRIDES Litigation,* 243 F.3d 722, 728 (3d. Cir. 2001) the Court addressed the issue of whether there was standing to appeal a fee award when the attorney's fees did not come out of the settlement fund and any attorney's fees denied would be returned to the defendant, rather than distributed to class members. Citing *Zucker v. Occidental,* the court stated

---

[1] Because Chapman appellants are not appealing the portion of the fee award which reduced the overall contingent fee by 2%, there is no need to address the argument that they lacked standing to do so

5

This unique relationship among plaintiffs' counsel, plaintiffs, and defendants in class actions imposes a special responsibility upon appellate courts to hear challenges to fee awards by class members whose claims may have been reduced or in some way affected in exchange for large fee awards. **This is so even in this case, where the Trust presumably will not benefit from a reduction in Kirby's attorneys' fees**, because the PRIDES settlement was structured so that any remaining Rights will be returned to Cendant.

*Id.* (emphasis added).

The *Cendant PRIDES* court added that the need for appellate supervision of

fee awards justified a more expansive interpretation of the standing requirement:

[O]ur interest as a reviewing court in ensuring that district courts fulfill their obligations and comply with the instructions and guidelines in this area bolsters our determination that the Trust has standing to challenge Kirby's fee award.

*Id*. at 731

Consequently, the Cendant PRIDE Court concluded

Because of the possible injury to [the objector] and other class members from the fee award ..., and, more importantly, because of our overarching interest in class action fee awards," we held that the objector had standing to appeal the fee award.

*Id*. at 732.

**C. Even Assuming that Chapman Appellants do not have Standing to Appeal the Common Benefit Fee award, and only their Counsel does, this Court has Jurisdiction to hear this Appeal under F.R. App. Pro. 3(c)**

6

In 1993, Rule 3(c) of the Federal Rules of Appellate Procedure was amended to state

> An appeal must not be dismissed for informality of form or title of the notice of appeal, or for failure to name a party whose intent to appeal is otherwise clear from the notice.

This Court has held that this amendment "was designed to liberalize [the] previously rigid" rule that only allowed appeals to be heard on behalf of parties identified as appellants in the notice of appeal. *Dixon v. Clem*, 492 F. 3d 665, 677 (6th Cir. 2007). Accordingly in *Dixon,* when an appeal was taken in the name of the client, but only the attorney had standing to appeal the order in question, this Court concluded that it was "objectively clear that it was counsel who intended to appeal," and therefore the appeal "complied with the liberal pleading requirements of Rule 3 (c) and that jurisdiction over his appeal …is proper." *Id*. at 678.

Here, the Notice of Appeal expressly identified the order awarding attorneys' fees as the subject of the appeal. ECF# 2136 PageID 72409. If Liaison Counsel's claims are taken at face value, and Chapman Appellants themselves have no interest in the award of fees to Liaison Counsel, it is "objectively clear" that Chapman Appellants' counsel is appealing, and the appeal should be heard under the 1993 amendment to F. R. App. Pro. 3 (c). [2]

---

[2] The cases Liaison Counsel cites to the contrary on page 20 of its brief were either decided before the 1993 amendments to Rule 3(c) or involve distinguishable facts. *Kleehammer v. Monroe County* 583 Fed. Appx. 18 (2d. Cir.2014) found that a

## II. Chapman Appellants Raised all of the Arguments made on this Appeal in the Lower Court

Liaison Counsel's waiver argument is based on the untenable premises that (1) Chapman Appellants did not request a complete examination of Liaison Counsel's time and expense records in the lower court and 2) Chapman Appellants lower court objection was only based on Hunter Shkolnik's initial declaration that some of his common benefit time was spent on the bone scan project, and that once Mr. Shkolnik withdrew that statement, Chapman Appellants' objections were moot. Liaison Counsel's brief at pp. 23-34 (pages 30-31 of the PDF).

In fact, Chapman Appellants unquestionably asked the lower court to review the time and expense records, and their objections were not based solely on Mr. Shkolnik's initial claim that he spent common benefit time on the bone scanning project. The objections were fundamentally based on the notion that awarding a common benefit fee to Liaison Counsel out of objectors' recoveries was unfair because 1) Liaison Counsel's monopoly on bone scanning had actually devalued rather than enhanced the claims of objectors, and in any event 2) the huge fees Liaison Counsel would likely receive as a result of that monopoly needed to be

---

clients' *pro se* appeal could not have been intended to be an appeal for her attorney; in *Holloman v. Mail-Well Corp*., 443 F3 832 (11th Cir 2006), unlike here, the notice of appeal did not identify the order impacting the attorney as a subject of the appeal.

considered in determining whether awarding them an additional common benefit fee would be reasonable.

The preservation of both issues is patent in the introduction to their fee objection:

> Liaison Counsel Napoli Shkolnik and Levy Konigsberg's fee motion (ECF No. 1458) seeks tens of millions of dollars for "common benefit work" without providing the underlying data needed to determine how much of their time and money was genuinely spent for "common benefit." Liaison Counsel represent thousands of individual clients. ECF # 1500 (stating Napoli Shkolnik had registered 9,987 clients for the settlement, and Levy Konigsberg had registered 6,191, as of March 25). Their fee petitions, however, make no effort to explain how they separated the work and expenses incurred in representing individual clients from their "common benefit" work. Nor do they permit the people who will pay for this common benefit—the attorneys who represent other individual plaintiffs **and their clients**— an opportunity to review the information they claim supports their motion. This Court should now allow these foxes to guard the chickencoop; Plaintiffs have a due process right to see the evidence of time and expense before they are ordered to pay for them.

> Even worse, in many instances, Napoli Shkolnik and Levy Konigsberg have not acted for the common benefit of other individual claimants, but to line their own pockets at the latter's expense. They structured a settlement which pays uniquely large sums to people who underwent bone scans-which just happens to t h e i r —and only their—clients. Because the sums to be paid are not fixed per types of claim but vary according to the ratio of claimants and types of claims, every extra dollar paid to a Liaison Counsel client who qualifies for more money because of a bone scan is a dollar less available for other individual claimants. They perpetuated their monopoly on bone scans by refusing to

9

> disclose the critical protocols to distinguished academics who worked with Class Counsel to set up a parallel program, so that they remained the only game in town. Then, when they "graciously" made three hours on Sundays available for bone scanning others who are not their clients, they unilaterally cancelled the appointments of clients of firms who questioned the illegal and unethical conduct which accompanied these scans

ECF # 1557 PageID 60410-60411 (emphasis original).

The objection also specifically challenged the reasonableness of Liaison Counsel's demand to be paid $500 for each bone scan "without any transparency as to the actual costs" and asked for the production of information relevant to the actual costs. *Id*. at 60417-60418.

The objection went on to state:

> Before they receive one penny in common benefit fees, Liaison Counsel should be required to disclose [inter alia]
>
> - The number of their clients who received bone scans
>
> - The itemized expenses for the bone scans
>
> - The numbers of putative class members and individual claimants represented by other attorneys who received bone scans at their facility
>
> - The amounts which Liaison Counsel have charged or intend to charge those people, or their lawyers, for those bone scans with a detailed itemization of the basis for those charges

*Id*. at PageID 60417.

10

Oral argument on the fee petition was held on July 15, 2021, long after Mr. Shkolnik had withdrawn his statement that his common benefit time included time spent on the bone scan project. ECF#1796 filed May 27, 2021. Nonetheless, Chapman Appellants counsel clearly and unequivocally objected to the common benefit fee because of the bone scan  issues:

> In a nutshell, my objection is that the settlement negotiated by liaison counsel is calculated to benefit their clients, not mine. Therefore, they should not receive a common benefit fee from my clients or for my clients.
>
> They're going to make plenty of money from their own cases. They don't need a piece of my fees [i.e. an additional common benefit fee].

Transcript of July 15, 2021, hearing, ECF No. 1906, Page ID 67045 -67046

The same day that the fee petition was argued, Chapman Appellants' Counsel argued the discovery motion which sought bone scan information. He madeit  clear that this information was being sought both for the fee petition and the fairness of the underlying settlement:

> The bone scan information we're seeking in discovery goes to both fair[ness] and attorneys' fees.

*Id.* at PageID 67073.

Plainly, Chapman Appellants submitted far more than a "minimal level in support of these arguments in the lower court. *In re Anheuser-Busch Beer Labeling Mktg. Litig.*, 644 Fed. Appx. 515, 527, (6th Cir, 2016).

Finally, even if this Court should somehow conclude these arguments were waived in the lower court, it should nonetheless exercise its discretion to hear them now, because of the same considerations which require a flexible approach to standing: the overwhelming judicial interest in assuring fairness and transparency in multimillion dollar fee awards in mass actions of great public interest.

After *Cendant PRIDE* was decided, the Third Circuit applied the same flexible standard in deciding whether a fee objection was waived:

> It would be incongruous indeed if the vital importance of searching judicial review of class action fee awards were sufficient to warrant an expansive conception of standing, but insufficient for a court to decline to invoke its equitable power not to consider certain claims. For that reason, we reject Lead Counsel's argument that we should not consider [appellant's objections on ground of waiver].

*In re Cendant Corp. Litigation*   264 F.3d 201, 273 (3d Cir 2001).

*See also In re Mercury Interactive*, 618 F. 3d 988, 992-93 (9th Cir. 2010*); In re National Football League Concussion Litig*., 821 F.3d 410, 430 (3d Cir. 2016) ("We agree that the usual waiver rules should not be applied mechanically in class actions. We have an independent obligation to protect the interests of the class, and in many instances class members are far removed from the litigation and lack the information

and incentive to object"); *In re Sw. Airlines Voucher Litig*., 799 F.3d 701, 714 (7th Cir. 2015).

### III.    Any "Findings of Fact" which the Lower Court made to Purportedly Support the Common Benefit Fee \ward to Liaison Counsel were Clearly Erroneous.

Finally, Liaison Counsel contends their fee award must be affirmed because it was supported by "unchallenged factual findings" in the fairness opinion.

Apparently, Liaison Counsel contends that because Chapman Appellants chose not to appeal the fairness finding—to the extent facts found in the fairness opinion support the fee award, those facts cannot be challenged now.

This is nonsense. Chapman Appellants are free to challenge the fee award even if they did not appeal from the fairness determination. *See, e.g., Zucker v. Westinghouse Elec. Corp.* 265 F.3d 171176, 3d Cir (2010) ("the fact that Rand did not object to the settlement does not mean that he cannot object to the fee application").

### A. The Evidence Overwhelmingly Demonstrated Liaison Counsel's Monopoly on Bone Scans in Flint

Although Liaison Counsel assert that the lower court disposed of Chapman Appellants' bone scan allegations in "nearly 50 pages of analysis", citing ECF# 2008, PageID 69633-69383, they do not cite a single one of these findings or explain how they relate to the fee award. Indeed, the lower court's "findings" on the

13

settlement fairness issue are hardly dispositive of the reasonableness of the common

benefit fee award.

For instance, in rejecting one of Chapman Appellants objections to the

fairness of the settlement, the lower court stated:

> The Court will not deny final approval because
> non-clients of Napoli Shkolnik were asked to sign
> a release form before participating in the Napoli
> Program.
> ***
> This dispute between the Chapman/Lowery
> Objectors' counsel and Napoli Shkolnik has little
> to do with whether final approval of the settlement
> should be granted or denied, and the Court will not
> reject the settlement on the basis that the
> Chapman/Lowery Objectors' counsel and Napoli
> Shkolnik could not agree on the content of the
> Napoli Program's release form, particularly when
> the Chapman/Lowery Objectors' counsel was
> threatening litigation over both the safety and
> availability of bone lead level testing.
> As this drama was unfolding, the Court's head was
> spinning.

ECF# 2008 PageID 69679

That the lower court's "head was spinning" raises doubts about the weight to

be accorded this "finding", let alone whether it justifies paying common benefit fees

to Liaison Counsel from the recoveries of Chapman Appellants.

Indeed, it is one thing to hold, as the lower court did, that the settlement should

be approved because "No one was required to obtain a lead level test from the Napoli

14

Program in the first place. Individuals who did not agree with the Napoli Program liability release form had the option to leave and refuse the test." *Id*. at 69679-69680.

It is quite another to award the Napoli firm a common benefit fee on the recoveries of ***the very same people*** they refused to accommodate for their bone scan program.

True, in another portion of its opinion, the lower court stated with regard to the bone scan program that "There is no monopoly here." *Id*. PageID 69675. The lower court based this conclusion on the premise that "Dr. Specht's methodology is set forth in his publications, which any other qualified expert could use." *Id*.

To the extent this "finding of fact" might be used to support the award of common benefit fees from Chapman Appellants' recoveries to Liaison counsel, it must be reversed because it is clearly erroneous. Fed.R.Civ.P. 52(a). A finding is 'clearly erroneous', even if there is some evidence to support it, "if the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364 395 (1948).

Here, the finding of "no monopoly" ignores overwhelming and undisputed evidence:

- Dr. Specht was the only person who could obtain a portable XRF device for use on humans in Flint.

15

- Even if Drs. Todd and Jepsen, both distinguished scientists, had been able to obtain the device form the manufacturer for use on humans, they needed access to Dr. Specht's **confidential** protocols "in order to assure the outcomes between the two sites would be consistent." Yet Dr. Specht never provided this information. Affidavits of Dr. Todd and Jepsen ECF No. 1497, Page ID 58185-58186. In other words, contrary to the lower court's finding, Dr. Specht never provided the "complete methodology" he used in bone scanning Flint residents, and his refusal to do so made it impossible for Class Counsel, working with Drs. Todd and Jepsen, to establish a parallel bone scanning facility impossible. *Id.* at PageID 58186.

- Just as Dr. Specht had a monopoly on bone scanning in Flint, Liaison Counsel had a monopoly on Dr. Specht. Dr. Specht refused to respond to repeated entreaties from Chapman Objectors' counsel asking to set up bone scan appointments for his clients. Declaration of Mark R Cuker filed Dec. 9, 2020, ECF # 94-2, Page ID 865 in Case 5:18-cv-10679

- Liaison counsel monopolized Dr. Specht's services for up to 100 clients a day, 6 days a week, exclusively between August 2019 and February 21, 2021. Only at that late date did they make three hours of appointments available on Sundays (see Chapman Appellants principal brief at pp. 9-14). Even then, Liaison Counsel cancelled the appointments of 54 clients represented by Chapman counsel. *Id.* at 13.

- Although a complete record is not available because the lower court refused to order Liaison Counsel to disclose the actual numbers, based on available data, it is reasonable to estimate that at least 97% of bone scans conducted by Dr Specht in Flint were for the clients of Liaison Counsel. Chapman Principal brief at 36.

In short, the lower court's conclusion that there was "no monopoly" on bone

scans in Flint flies in the face of the undisputed facts.[3]

---

[3] Contrary to Liaison Counsel's claim at pp. 28-29 of their brief, Chapman Appellants did not give up their rights to discovery because they chose to

### D. There was No Evidence to Support any finding that $500 is the reasonable cost of a bone scan

Liaison Counsel attempt to justify the court's order of a $500 payment for bone scan results with two arguments, First, Liaison Counsel assert that the lower court did not actually order this payment—the clients themselves actually agreed to it.

This argument fails for two reasons. First, the court never cited this alleged "agreement" as a basis for its award. ECF # 2180 PageID 72987.

Second, there was no such agreement. The alleged agreement cited by Liaison Counsel actually stated "I understand there is a cost for the bone test. The cost will be no more than $500. I also understand that the payment will be deferred at this time and the method by which it is paid will be subject to a determination by the Court." ECF # 1906 PageID 67053. In other words, the only "agreement" was to pay whatever amount was found to be reasonable by the court, up to a maximum of $500.

This leads to Liaison Counsel's next argument—that the lower court actually found the $500 fee to be reasonable. True, in approving the fairness of the settlement, the lower court stated that:

---

participate in the settlement. The court's role in approving both common benefit fees and class action fees is identical: assuring that both sets of fees are reasonable under all applicable legal and ethical standards. ECF# 2105, PageID 72075-72076, 72079. Consequently, the same discovery standards apply in both situations.

> Five hundred dollars is not an unreasonable amount of money for individuals represented by counsel other than Co-Liaison Counsel to pay for obtaining a bone lead level test through the Napoli Program. Napoli Shkolnik undertook the start-up work, including paying the initial costs for the program and obtaining the necessary equipment. The firm employed staff including skilled nursing staff and an office manager. It rented office space in Flint, plaid for cleaning services, and, significantly, it paid the fees and costs for Dr. Specht to obtain the bone lead level testing device(s) used at the facility, train individuals in how to conduct the tests, and interpret the rest results.

ECF# 2008 PageID 69680-68681.

The only problem with this "finding" is that there were **no facts to support it**. None.

When objectors counsel asked for discovery of the actual amount spent for equipment, staff, facilities and Dr. Specht himself, Liaison Counsel objected to disclosing it. The lower court upheld the objection, assuring that there would be no acts to support any finding about the reasonable costs of the scans. Principal Brief at pp. 15-22.

Without knowing the actual cost of staff, facilities, equipment and Dr. Specht, there was no factual basis whatsoever for the lower court to conclude that the $500 charge was reasonable. The lower court abandoned its obligation to make sure that Liaison Counsel did not use its bone scan program as an independent profit center.

**IV.    Liaison counsel does not dispute that Equitable Standards Govern the award of Common Benefit fees**

18

Case: 22-1197    Document: 27    Filed: 01/03/2023    Page: 23

Liaison Counsel's opposition brief never disputes the legal principles on which this appeal is based:

- That an award of common benefit fees must be based on equitable principles

- That Liaison Counsel are not entitled to a common benefit fee from Chapman Appellants if they did not act equitably toward them

- That working to increase their own clients' recoveries at the expense of the clients of other attorneys disqualifies them from receiving a common benefit fee from the latter

- That in judging the common benefit fee, the lower court should have looked at the total fee Liaison Counsel will receive from their own clients cases, and, in particular, how much of that fee will result from their bone scan monopoly, and how much less clients of unrelated law firms will receive as a result of the extra money going to Liaison Counsel's clients, before deciding whether any common benefit award would be reasonable

Accordingly, this Court should reverse and remand the common benefit fee award to the lower court with instructions to conduct a full and transparent inquiry into all of these facts. The lower court should be directed to make specific findings of fact addressing the following questions:

- How many bone scans were conducted on Liaison Counsel clients vs. clients of unrelated law firms?

- How much in total attorney's fees are Liaison Counsel likely to receive from their own clients' cases and how much of that is due to the enhanced awards resulting from their bone scan program?

- How much less money is available to the clients of unrelated law firms due to Liaison Counsel's monopolization of the bone scan program?

- What were the actual costs of the bone scan program?

The lower court should then be required to make conclusions of law discussing 1) whether, in light of the facts revealed, awarding any common benefit fee to Liaison Counsel from the recoveries of clients of unrelated law firms is fair and equitable, and 2) what is the fair and reasonable cost of a bone scan.

**CONCLUSION**

The award of common benefit fees to Liaison Counsel and $500 per bone scan report should be reversed and remanded for further proceedings as set forth above.

CUKER LAW FIRM

By:    */s/ Mark R. Cuker*
       MARK R. CUKER
       One Logan Square, Suite 1200
       Philadelphia, PA 19103
       mark@cukerlaw.com
       (215) 531-8512

20

## CERTIFICATE OF COMPLIANCE

I certify that this brief conforms to the requirements of Rules 341(a) and (b). The length of this brief, excluding the pages or words contained in the Rule 341(d) cover, the Rule 341(h)(1) table of contents and statement of points and authorities, the Rule 341(c) certificate of compliance, the certificate of service, and those matters to be appended to the brief under Rule 342(a), is 4,756 words.

CUKER LAW FIRM

By:    */s/ Mark R. Cuker*
        MARK R. CUKER
        One Logan Square, Suite 1200
        Philadelphia, PA 19103
        mark@cukerlaw.com
        (215) 531-8512

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system on December 29, 2022, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Mark R. Cuker*
MARK R. CUKER

**Addendum of Designation of Relevant District Court Documents**

As 6th Cir. R. 30(g) requires, Chapman-Lowery and Roberts Appellants designate the following district court documents as relevant to this appeal:

RE# 1458, Motion for Attorney Fees and Reimbursement of Expenses.

RE# 1497, Affidavit of Dr. Andrew Todd and Karl Jepsen, PageID 58187

RE# 1500, Response to joint Motion to Extend Deadlines to Register for, Object to, or Opt-Out of Partial Settlement.

RE# 1557, Response to Motion for Attorney Fees, PageID 60410-11, 60417-18.

RE# 1796, Supplemental Brief Re: Motion for Attorney Fees and Reimbursement of Expenses, PageID 64515

RE# 1906, Transcript of Motion Hearing held on 7/15/2021. PageID 67045-46, 67073

RE# 2008, Opinion and Order Granting Final Approval of a Partial Settlement, Granting Certification of a Settlement Class, Granting Appointment of Settlement Class Counsel; Denying Objections, and Adopting Report and Recommendation, PageID 69533-69714.

RE# 2105, Opinion and Order Granting in Part and Denying in Part Motion for Attorney's Fees and Reimbursement of Expenses; Denying Motion to Review, PageID 72046-72144.

RE# 2136, Notice of Appeal Filed by Tommie Lowery, Sr., PageID 72409-72410.

RE# 2180, Order Establishing Procedures for Management of Claims Process and Expense Payment for Unrepresented Claimants and or Claimants with Multiple Counsel, PageID 72987-72988.

RE # 94-2, Page ID 865 in Case 5:18-cv-10679